**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 95-40309
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BOBBY T. TAYLOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(B-94-CR-171-1)
_____

March 7, 1996

Before REAVLEY, DAVIS and SMITH, Circuit Judges.

PER CURIAM:[1]

Taylor was convicted of possession of cocaine with intent to distribute. He now contests the district court's denial of his motion to suppress evidence and statements. We AFFIRM.

I.

On November 3, 1994, Arturo T. Mendoza, a U.S. Border Patrol agent, was assigned to "transportation check" duty at the airport in Harlingen, Texas. Harlingen is located south of the U.S.

---

[1]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

checkpoints approximately 25 miles from the Mexican border, and the airport is a major conduit for illegal aliens and drug traffickers.

Mendoza and his partner were observing passengers from the second level of the airport and noticed Bobby Taylor as security personnel were checking his bags. Mendoza testified that Taylor was dressed in oversized, loose-fitting clothes, which were not tucked inside his waistband. From Mendoza's vantage point, Taylor appeared to be wearing several layers even though it was a very mild day. Further, Mendoza stated that Taylor seemed to be very nervous as the security personnel checked his bag and gave the impression that he was looking around in case he needed to make a quick exit.

Mendoza walked over to the security area and continued to observe Taylor. Taylor saw Mendoza watching him and looked away nervously. Once the security personnel finished checking Taylor's bags, Mendoza stepped in front of Taylor, showed Taylor his badge, explained what he did, and asked Taylor if they could have a conversation. Taylor agreed and followed Mendoza to some chairs in the public concourse, where they sat down. Mendoza then instructed Taylor that he was not under arrest, had no obligation to answer any questions, and was free to leave at any time. Next, Mendoza asked Taylor for some identification. Taylor, whose hands began to tremble, produced his Georgia driver's license with the name Bobby Taylor. Taylor's nervousness prompted Mendoza to request Taylor's plane ticket, which he also produced. The ticket bore the name "Dennis Smith." Mendoza, while retaining Taylor's

plane ticket, then asked Taylor where he was from and Taylor replied that he was from Georgia but had a mixed Korean-American heritage.

At this point, Mendoza inquired about Taylor's bags and Taylor agreed to allow Mendoza to search them. Mendoza, never intending to check the bags because they already had been searched, used this question only to observe Taylor's response; it caused Taylor to become more nervous. Finally, without checking the bags, Mendoza asked Taylor whether he had anything concealed around his waist. Taylor stood up and raised his shirt. As he raised his shirt, Taylor attempted to grab an object out of his waistband and to conceal it in his shirt. Mendoza, however, saw the object protruding from Taylor's shirt and inquired about it. Taylor sat down and said that it was cocaine. At that point, Mendoza advised Taylor that their conversation was no longer casual and that he was under arrest for suspicion of transporting illegal narcotics. In a one-count indictment, the grand jury charged Taylor with possession with intent to distribute approximately 7.2 ounces (approximately 204.12 grams) of cocaine. Taylor filed a motion to suppress evidence seized by border patrol agents at the Harlingen Airport, and his subsequent incriminating statements. The district court denied the motion and found that Taylor consented to the events or, alternatively, that the evidence was obtained during a valid investigative stop based on reasonable suspicion. Taylor then entered a conditional guilty plea,

in which he preserved the right to bring this appeal challenging the denial of his motion to suppress.

## II.

When reviewing a district court's decision on a motion to suppress and when that decision is based on testimony from a suppression hearing, the district court's factual findings are to be taken as true unless they are clearly erroneous or are the result of an incorrect view of the law. United States v. Mendez, 27 F.3d 126, 129 (5th Cir. 1994).

Taylor's Fourth Amendment rights were not implicated by Mendoza's initial actions. Mendoza was not required to have individualized suspicion about Taylor when he approached Taylor, identified himself, asked Taylor questions, and requested to see Taylor's identification. See Florida v. Bostick, 501 U.S. 429, 434 (1991); United States v. Cooper, 43 F.3d 140, 145 (5th Cir. 1995). A seizure occurs when, in the light of all the circumstances, the officer's conduct would have communicated to a reasonable person that he was not free to ignore the officer's requests and to continue about his business. Bostick, 501 U.S. at 436-37. The government contends that Mendoza carefully planned his actions to ensure that Taylor would feel free to leave, especially by informing Taylor that he was free to leave at any time. The district court found that Taylor consented to all of Mendoza's actions and that no seizure occured until Taylor admitted he had cocaine and Mendoza placed him under arrest.

4

Viewing the evidence in the light most favorable to the Government, we find that the district court's findings of fact are not clearly erroneous and adequately support its conclusions of law. Even though the district court found that Mendoza checked Taylor's plane ticket, it could have properly concluded that the amount of time he held the ticket was too short to constitute any sort of stop or detention and that Taylor continued to evince his consent to Mendoza's questions.

The district court's alternative finding that even if Mendoza's possession of the ticket transformed the consensual encounter into an investigative stop, Mendoza had a reasonable suspicion to stop Taylor, is also not erroneous. The district court relied on the following facts to find that Mendoza had reasonable suspicion to seize Taylor: Harlingen is a source city for drugs near the Texas-Mexico border; Taylor appeared nervous when initially observed and became increasingly nervous during the questioning; Taylor wore loose-fitting clothing and a jacket on a mild day, consistent with a drug courier trying to conceal drugs on his body; and the name on Taylor's driver's license did not match the name on his plane ticket. These findings of fact are not clearly erroneous and support the district court's alternate finding that if Mendoza's questions became an investigative stop, Mendoza had reasonable suspicion to make the stop.

AFFIRMED

5